## WORK, Secretary of the Interior, v. STAN'D-ARD OIL CO.

Court of Appeals of District of Columbia.

Submitted October 11, 1927. Decided December 5, 1927.

No. 4540.

1. **Public lands ⟲⟳52—Secretary of the Interior had jurisdiction under stipulation by parties to determine title to school lands granted to state (Act March 3, 1853 [10 Stat. 244]).**

Where proceedings to determine title to school lands granted to state under authority of Act March 3, 1853 (10 Stat. 244), were had before the Secretary of the Interior, by express stipulation of parties in interest that the taking of testimony in local land office was unnecessary, the Secretary had jurisdiction to hear and determine case, and to render final decision, without having issue first tried in local land. office, with appeal to Commissioner.

2. **Public lands ⟲⟳96—Jurisdiction of Secretary of the Interior relative to public lands may be exercised either directly or by review on appeal.**

Jurisdiction of Secretary of the Interior in the matter of the supervision of all public business relating to public lands is broadly supervisory, and may be exercised either directly or by review on appeal.

3. **Public lands ⟲⟳52—Contention that government officials had no notice Secretary of the Interior intended to consider mineral character of school land granted held too late (Act March 3, 1853 [10 Stat. 244]).**

Where parties to proceedings before Secretary of the Interior to determine mineral character of school land granted to state under Act March 3, 1853 (10 Stat. 244), well knew that only question in issue was determination of such mineral character at time of stipulation for hearing without taking of testimony in local land office, contention thereafter that various government officials had no notice that Secretary intended, without taking additional testimony, to consider mineral character of land as known to exist at time of filing of survey, was too late.

4. **United States ⟲⟳135—United States held not "requisite party" to proceeding to enjoin Secretary of the Interior from continuing proceedings or hearing on mineral character of land granted state (Act March 3, 1853 [10 Stat. 244]).**

The United States held not a "requisite party" to proceeding to enjoin Secretary of the Interior from continuing proceeding for hearing to determine mineral character of lands granted to state under Act March 3, 1853 (10 Stat. 244), which had been theretofore dismissed, since, after decision that land was not mineral in character at time of approval of survey, title passed to state, and Secretary of the Interior had no jurisdiction over the land.

5. **Injunction ⟲⟳75—Refusal to admit testimony in proceeding before Secretary of the Interior cannot be considered in collateral proceeding to enjoin continuance of hearing (Act March 3, 1853 [10 Stat. 244]).**

Refusal of Secretary of the Interior to admit testimony in hearing on mineral character of lands granted to state under Act March 3, 1853 (10 Stat. 244), merely amounts to error, and cannot be considered in collateral proceeding to enjoin continuing proceedings to determine character of land theretofore dismissed.

6. **Public lands ⟲⟳52—Determination by Secretary of the Interior as to mineral character of lands granted to state held made on sufficient evidence, and final (Act March 3, 1853 [10 Stat. 244]).**

Where Secretary of the Interior, in proceeding to determine mineral character of lands granted to state under Act March 3, 1853 (10 Stat. 244), had before him records of department and all public documents bearing on issues involved in adverse proceedings, determination of case was not made without sufficient evidence, and was binding in collateral proceedings.

Appeal from the Supreme Court of the District of Columbia.

Suit for an injunction by the Standard Oil Company against Hubert Work, Secretary of the Interior. Decree granting an injunction, and defendant appeals. Affirmed.

Peyton Gordon, of Washington, D. C., and W. C. Morrow, of Seattle, Wash., for appellant.

F. D. McKenney and Louis Titus, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This is a proceeding in equity, submitted to the court below on bill, answer, and an agreed statement of facts, to determine whether the title to certain lands therein described passed to the state of California under the provisions of the Act of Congress of March 3, 1853 (10 Stats. 244). The Act, among other things, provided for the grant to the state of section 16 and section 36, in each township, for public school purposes.

It appears that the survey of the lands in question, section 36, township 30 south, range 23 east, Mt. Diablo base and meridian, was completed on December 20, 1901, approved by the Surveyor General August 1, 1902, accepted by the Commissioner of the General Land Office January 26, 1903, and filed in the United States local land office at Visalia, Cal., May 16, 1903.

From the agreed statement of facts it appears that the lands were returned on the official survey as mineral in character, but that oil was not discovered in township 30 until 1911, and the first discovery of oil in the section in question occurred in 1918. The nearest discovery was in township 30,

range 22 east, where oil had been produced for some years prior to 1903.

It also appears that on the 28th of February, 1900, the Commissioner of the General Land Office directed the local land office at Visalia to suspend from disposition, until further ordered, a large tract of land, including township 30, in which the land in controversy is situated, pending inquiry as to the character of the land. An agent was accordingly directed to examine and report upon the mineral or nonmineral character of the land included in the order of suspension. The agent made a report to the Commissioner of the General Land Office, March 22, 1904, to the effect that no oil wells had been bored in township 30, and that in his opinion the lands in that township should be relieved from further suspension. The Commissioner, on the strength of this report, on April 5, 1904, vacated the order of suspension as to township 30.

Plaintiff, the Standard Oil Company, acquired title to a portion of section 36 through mesne conveyances from the state of California, and is in possession of the balance under a contract for development with persons holding title from a grantee of the state. The title of the state, and its successors in interest, was not challenged until 1914, when adverse proceedings were ordered on a report of the Field Division at San Francisco, entered April 5, 1913. In these proceedings it was charged that section 36 contained valuable products of petroleum, and had been known to be mineral in character prior to January 26, 1903. No action, however, was taken on the pending contest until February 19, 1921, when it was called to the attention of the Attorney General and the Secretary of the Navy. The question of the sort of proceeding that should be brought to test the title was submitted to the Department of Justice, where it was decided that the determination of title was a matter within the jurisdiction of the Department of the Interior, since the vesting of title depended upon the mineral or nonmineral character of the land at the date of the approval of the survey.

Accordingly the Department of Justice, after considering the advisability of applying to the court for injunction and receivership, to prevent the further operation and development of the lands in question, decided that such delay would result in large quantities of oil being drained from the land into the property of contiguous operators. It was agreed, therefore, that such a proceeding was inadvisable, if an early hearing in the Interior Department could be had to determine the character of the land at the time of the approval of the original survey. A conference was held between representatives of the Department of Justice, the Department of the Interior, the Department of the Navy, and the plaintiff oil company, and the company agreed that it would refrain from further drilling and development of the land, awaiting a speedy determination in the Department of the Interior with respect to the matter of title.

Pursuant to this agreement, plaintiff company, by their representatives, requested the Secretary to decide the title to section 36, and, by permission of the Secretary, a brief was filed in support of the application. The brief, among other things, called attention to the survey of the lands and the approval thereof, the suspension from disposition of township 30, pending the report of the special agent of the department as to the character of the land, and the relieving of the lands from suspension on the ground that no mineral had been discovered thereon; to the certificate of the state from the local land office at Visalia, certifying there was no valid claim against the state's title; to the fact that the land was sold for a small tax in 1902, and not redeemed until 1908, as evidence of the opinion held as to its mineral character and value when the survey was approved in 1903; to a hearing before the committee on public lands of the House of Representatives, December 18, 1916, at which a tender to the Navy of naval reserve No. 1, in which the land in controversy is located, was discussed, and the tender refused on the ground that the Navy Department did not believe the land to contain oil; and to a hearing before the Senate committee on public lands, February 9, 1916, at which Commanders Wright, Richardson, and Landis, of the Navy, testified to the nonmineral character of the land.

Accordingly a written notice was given by the Secretary of the Interior to the oil company, the Attorney General, and the Secretary of the Navy that hearing had been asked "as to whether the title to section 36 passed to the state of California under its grant." A hearing was set for June 8, 1921. The parties notified were requested by the Secretary to be present. A hearing was had, all parties being fully and ably represented. It was agreed by all the parties, except Mr. Finney, First Assistant Secretary of the Interior, who had been called in to sit with the Secretary, that the taking of evidence in the local land office was not necessary for the purpose of determining whether or not the

land in question, and land adjacent thereto, showed structural and geological conditions indicating that it was oil land at the time of the approval of the survey.

The case was accordingly heard by the Secretary, and "at the conclusion of the hearing the Secretary of the Interior asked Mr. Finney, and other representatives of the government, whether the facts stated by the representatives of the transferees were admitted, and Mr. Finney replied that the statement was substantially correct." The Secretary thereupon ordered the adverse proceedings dismissed and his decision was, by his direction, written by Mr. Finney and addressed to the Commissioner of the General Land Office. The Commissioner was directed to dismiss the proceedings against the state of California, "to notify all parties in interest of the dismissal, and to close the case upon the records of the General Land Office."

No application for rehearing was made, and the case was considered closed until May 8, 1925, when the defendant Secretary, of his own motion, reversed and vacated the decision of his predecessor in office, and ordered a hearing of the charges made in the adverse proceedings, which had been dismissed.

The present action was brought for an injunction pendente lite, enjoining the defendant Secretary from continuing the proceedings directed by him, and upon final hearing for a permanent injunction. On hearing, the injunction as prayed for was granted, and from the decree this appeal was taken.

[1] By the act of 1853 the grant of school lands to the state of California was made under substantially the same terms as similar grants were made from time to time to the other states of the Union, with the usual reservation that the lands so granted were not known to be chiefly valuable for mineral at the date of the approval of the survey thereof by the Land Department. The question here presented, involving the title of the state to these lands, narrows itself to one of procedure.

It is urged by counsel for the government that the rules, regulations, and procedure of the Interior Department require that, where dispute arises as to the mineral character of public lands, the issue must first be tried out in the local land office, where testimony can be taken, and that the decision of the local land office can be carried to the Commissioner of the General Land Office for review only by appeal, and from the decision of the Commissioner by appeal to the Secretary, who is required to determine the case upon the record made in the local land office. This course of procedure may well be necessary to insure orderly procedure where testimony is to be taken. In the present case, however, it was expressly stipulated, by the parties in interest, that the taking of testimony in the local land office was unnecessary, since the office records, documents, and agreed statement furnished a complete case on which to base a decision of the question presented to the Secretary.

[2] Wide jurisdiction is conferred upon the Secretary in the matter of the supervision of all public business relating to public lands. His duties are not specifically defined by statute, but are regulated by rules and regulations, adopted by the Department, for the ordinary procedure and disposition of the public business. His jurisdiction is broadly supervisory, and it may be exercised either directly or by review on appeal, and, as said by the court below: "That supervisory authority he may exercise either by direct orders, or by review on appeal. True enough, he may by rules, orders, and regulations prescribe the means, manner, and method of exercising his supervisory powers, and may delegate to subordinates that which he might do himself. Such rules, orders, and regulations, however, were designed to facilitate, not to hamper, the department in the dispatch of its business, and from that it follows that any delegation of his supervisory powers does not exclude him from their exercise should he so elect."

The interpretation, by the department itself, of the summary and discretionary jurisdiction of the Secretary to dispose of matters of public importance upon due notice and hearing, is quoted with approval from 5 L. D. 495, in Knight v. United States Land Association, 142 U. S. 178, 12 S. Ct. 258, 262 (35 L. Ed. 974), as follows: "The statutes, in placing the whole business of the department under the supervision of the Secretary, invest him with authority to review, reverse, amend, annul, or affirm all proceedings in the department having for their ultimate object to secure the alienation of any portion of the public lands, or the adjustment of private claims to lands, with a just regard to the rights of the public and of private parties. Such supervision may be exercised by direct orders or by review on appeals. The mode in which the supervision shall be exercised in the absence of statutory direction may be prescribed by such rules and regulations as the Secretary may adopt.

When proceedings affecting titles to lands are before the department, the power of supervision may be exercised by the Secretary, whether these proceedings are called to his attention by formal notice or by appeal. It is sufficient that they are brought to his notice. The rules prescribed are designed to facilitate the department in the dispatch of business, not to defeat the supervision of the Secretary. For example, if, when a patent is about to issue, the Secretary should discover a fatal defect in the proceedings, or that by reason of some newly ascertained fact the patent, if issued, would have to be annulled, and that it would be his duty to ask the Attorney General to institute proceedings for its annulment, it would hardly be seriously contended that the Secretary might not interfere and prevent the execution of the patent. He could not be obliged to sit quietly and allow a proceeding to be consummated, which it would be immediately his duty to ask the Attorney General to take measures to annul. It would not be a sufficient answer against the exercise of his power that no appeal had been taken to him, and therefore he was without authority in the matter."

The court in the same case (page 181 (12 S. Ct. 264) expressed its view on the same subject, as follows: "It makes no difference whether the appeal is in regular form, according to the established rules of the department, or whether the Secretary on his own motion, knowing that injustice is about to be done by some action of the Commissioner, takes up the case and disposes of it in accordance with law and justice. The Secretary is the guardian of the people of the United States over the public lands. The obligations of his oath of office oblige him to see that the law is carried out, and that none of the public domain is wasted, or is disposed of to a party not entitled to it. He represents the government, which is a party in interest in every case involving the surveying and disposal of the public lands."

While the matter of procedure, in contested cases from the local land office to the Secretary by appeal, is regulated by rules and regulations, the rules thus adopted by no means deprive the Secretary of his general supervisory authority as conferred by statute. In the case of extraordinary emergency or exigency, the Secretary may exercise his supervisory power under rules of the department which provide in effect that none of the rules in the department shall be so construed as to deprive the Secretary of any direct or supervisory power conferred upon him by law. Indeed, it was agreed by all

the parties in this case that, inasmuch as no testimony was required on disputed issues of fact, it was proper and in accordance with the practice in the department for the Secretary to hear pending cases and to decide them on agreed statement of facts, the records in his office, and documentary evidence. We are of opinion, therefore, that the Secretary had jurisdiction to hear and determine the case presented to him, and to render a final decision therein.

[3] It is contended, however, by counsel for defendant, that the various officials of the government had no notice that the Secretary intended, without the taking of additional testimony, to consider the mineral character of the land, as known to exist in 1903. It is too late to question the sufficiency of the notice, since all parties interested were present in response thereto, and agreed that the hearing might proceed upon the record before the Secretary. The notice recited in terms that the hearing was to determine "as to whether the title to section 36 passed to the state of California under its grant." It was well known by all parties that the only question in issue was the determination of the mineral character of the land at the time of the approval of the survey in 1903. Indeed, the hearing resulted from a report of the Department of Justice to the Navy and Interior Departments that the mineral character of the lands had not been determined, that it could only be decided by the Secretary of the Interior, and that an emergency existed which would not justify the delay which would follow if proceedings were instituted in the courts, much less the tedious procedure by appeal through the various tribunals of the Land Department.

It may be well to inquire, if the hearing was not to determine this issue, what was its purpose? Why this distinguished array of representatives of the different departments of the government, if they were not interested in the result of the hearing? As the learned justice below pertinently observed in his opinion: "The presence of all the parties before the Secretary of the Interior on June 8, 1921, was not an informal gathering to hear somebody talk, but to have the issues between the government and the claimants speedily determined by the only official clothed with power to take immediate cognizance of the matter and to make such a determination. To hold otherwise would result in ignoring, not only the agreement entered into by the authorized representatives of the government and the transferees, but the considerations which induced the ac-

cord and the exigency which it was intended to meet. The time for mere talking ended with the conferences, and apparently prompt action, not talk, was the only available way of meeting the situation."

With the decision of the Secretary that the land was nonmineral in character at the time of the approval of the survey, nothing further remained for the Interior Department to do. The grant was a grant in præsenti, and title passed to the state with the approval of the survey. There was no patent to be issued. The passing of the legal title was complete. It was the last act in the series essential to transfer the title of the government to the state. Title having passed, the present Secretary has no longer jurisdiction over the land. "With the title passes away all authority or control of the Executive Department over the land, and over the title which it has conveyed. It would be as reasonable to hold that any private owner of land who has conveyed it to another can, of his own volition, recall, cancel, or annul the instrument which he has made and delivered. If fraud, mistake, error, or wrong has been done, the courts of justice present the only remedy. These courts are as open to the United States to sue for the cancellation of the deed or reconveyance of the land as to individuals, and, if the government is the party injured, this is the proper course." Moore v. Robbins, 96 U. S. 530, 533, 24 L. Ed. 848.

[4] It is therefore futile to contend that the United States is a requisite party to this proceeding. If the legal title were still in the United States, this would be so; but, title having passed, the action here is one solely to prevent the Secretary from exercising a jurisdiction which he does not possess.

[5] Equally untenable is the contention of counsel for the government that the decision of the former Secretary should be vacated, because it is alleged that he refused to consider evidence of geological conditions as bearing upon the question of the known mineral character of the land. Counsel, in their brief, have repeatedly admitted the jurisdiction of the Secretary over the adverse proceedings. Having jurisdiction of the case, if he refused to admit evidence that should have been admitted, it merely amounts to error, which cannot be considered in this collateral proceeding.

[6] We do not agree that the case was determined by the Secretary without sufficient evidence. He had before him the records of the department and of all public documents bearing upon the issues involved in the adverse proceedings. He had the statement of facts made by counsel for plaintiff, made in the presence of the representatives of the government, and without objection admitted and conceded by the First Assistant Secretary to be substantially correct. Without stopping to review the evidence before the Secretary, and its pertinency as bearing upon the case here disclosed by the record, it is sufficient that all parties were represented. No objection was presented to the submission of the case, and the Secretary, acting within his jurisdiction, decided the case. It would now be in conflict with all lawful and just rules of procedure to hold that the decision, in the absence of any averment of fraud, does not possess such finality as to forbid its future reversal in the manner here attempted.

The decree is affirmed, with costs.